**Silvia Amaro MARDONES and Omar Vicente Mardones–Rojas, Petitioners,**

**v.**

**Edward McELROY, District Director of the Immigration and Naturalization Service of New York, and Janet Reno, Attorney General of the United States, Respondents.**

**Docket No. 98–4324**

United States Court of Appeals, Second Circuit.

Argued: July 15, 1999

Decided: Sept. 17, 1999

As Amended: Oct. 29, 1999

---

laws have a certain inexorability." *United States v. Krcic,* 186 F.3d 178, 179 (2d Cir.1999). We cannot help petitioners avoid the plain requirements of those laws or the consequences of their own behavior.

## BACKGROUND

Omar Vicente Mardones–Rojas, a native of Chile, and his wife, Silvia Amaro Mardones, a native of Guatemala, have resided in the United States since 1982. During the intervening seventeen years they have been continuously employed and have consistently paid their taxes. They own their own home and have two school-aged children who are United States citizens. Mrs. Mardones has extensive family ties in the United States, including her father and four siblings, all of whom are citizens. Petitioners legally entered the United States on non-immigrant visas in 1982. Upon the expiration of their visas, they remained in the United States without permission, thereby becoming "illegal aliens." Eight years ago, in 1991, the Immigration and Naturalization Service ("INS") instituted deportation proceedings against them.

At a hearing before an Immigration Judge ("IJ") on March 11, 1992, petitioners conceded their deportability and stated their intention to seek suspension of deportation pursuant to Immigration and Nationality Act ("INA") § 244(a), 8 U.S.C. § 1254(a) (repealed 1997), or, in the alternative, voluntary departure pursuant to INA § 244(e), 8 U.S.C. § 1254(e) (repealed 1997). Additionally, Mrs. Mardones indicated that she sought asylum pursuant to the terms of the class action settlement approved in *American Baptist Churches v. Thornburgh,* 760 F.Supp. 796 (N.D.Cal. 1991) (approving settlement between various government agencies and a class of Salvadoran and Guatemalan refugees providing, *inter alia,* that Guatemalans present in the United States as of October 1, 1990 have the right to a *de novo,* unappealable asylum hearing before a specially trained asylum officer and to a stay of deportation proceedings in the interim);

Michael G. Moore, Springfield, MA, for Petitioners.

Diogenes P. Kekatos, Assistant United States Attorney, New York, N.Y. (James A. O'Brien III, Special Assistant United States Attorney, Mary Jo White, United States Attorney for the Southern District of New York, Gideon A. Schor, Assistant United States Attorney, New York, NY, on the brief), for Respondents.

Before: WALKER, CABRANES, and SACK, Circuit Judges.

SACK, Circuit Judge:

The description of the facts underlying this case is a chronicle of petitioners' highly unfortunate exercise of bad judgment or reliance on bad advice, the effects of which they now seek to overcome on appeal. But, as Judge Oakes, speaking for the Court, recently mused, "the immigration

*see also Blanco v. INS,* 68 F.3d 642, 644–45 (2d Cir.1995) (citing *American Baptist Churches,* 760 F.Supp. at 799–800).

On December 13, 1993, petitioners again appeared before an IJ, explaining that Mrs. Mardones' citizen father recently had filed a petition for a "third preference" immigrant visa on Mrs. Mardones' behalf, and that the petition had been approved by the INS. Mrs. Mardones was entitled to be included in the "third preference" category by reason of her status as the married daughter of a United States citizen. *See* INA § 203(a)(3), 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.2(d). Approval of the petition meant, in substance, that Mrs. Mardones could begin the process of obtaining lawful immigrant status as soon as an immigrant visa became available in that category under a quota system established by Congress. *See* INA § 204(a)(1)(A)(i), 8 U.S.C. § 1153(a)(3). Availability of a visa in that category would depend on whether the "priority date" assigned to Mrs. Mardones had been reached on a waiting list maintained by the Department of State. *See* 8 C.F.R. § 245.1(g); 22 C.F.R. §§ 42.51–42.55. Mr. Mardones, as Mrs. Mardones's spouse, would be entitled to the same immigrant status and the same order of consideration as his wife pursuant to INA § 203(d), 8 U.S.C. § 1153(d).

At the December 13, 1993 hearing, petitioners agreed to drop their requests for suspension of deportation and asylum in exchange for the government's agreement to postpone voluntary departure until a full year later, December 13, 1994. It was anticipated that during this time period, petitioners would be able to secure lawful immigrant status, mooting the deportation proceeding against them.

The IJ agreed to this arrangement, warning petitioners that in view of the lengthy departure period, it would be unlikely for them to receive any further extension from the INS. The IJ emphasized also that should petitioners fail to depart by the deadline, the order of voluntary departure automatically would change to an order of deportation and, pursuant to INA § 242B(e)(2)(A), 8 U.S.C. § 1252b(e)(2)(A) (repealed 1997), petitioners would be subject to a five-year ban on seeking certain forms of relief—including adjustment or change of status to permanent legal resident. The IJ issued these warnings in English and Spanish, orally and in writing, and petitioners indicated that they understood.

In late 1994, with their departure deadline a mere eleven days away, Mrs. Mardones' priority number still had not become current. Petitioners therefore requested a six-month extension from the INS. The request emphasized petitioners' belief that Mrs. Mardones' priority number would become current within a month or two, and adverted to the enactment of a new law, INA § 245(i), 8 U.S.C. § 1255(i), permitting aliens who were for the first time in an unlawful immigration status to seek adjustment of their status without first departing from the United States as petitioners had been required to do.

The INS did not respond to the request, the December 13 deadline came and went, and petitioners remained in the United States. Orders of deportation were therefore automatically entered against them.

Six months later, in June 1995, with Mrs. Mardones' priority date at last having become current, petitioners moved to reopen their deportation proceedings in order to permit petitioners to seek adjustment of status while remaining in the United States. Petitioners' motion faced a significant obstacle, however, in the form of INA § 242B(e)(2)(A), which at the time provided:

[A]ny alien allowed to depart voluntarily under section 1254(e)(1) of this title . . . who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for relief

described in paragraph (5)[1] for a period of 5 years after the scheduled date of departure....

8 U.S.C. § 1252b(e)(2)(A) (footnote added). Because adjustment of status pursuant to INA § 245(a) is among the forms of relief subject to INA § 242B(e)(2)(A)'s five-year ban, *see* INA § 242B(e)(5)(C), 8 U.S.C. § 1252b(e)(5)(C) (repealed 1997), petitioners' motion to reopen their deportation proceedings in order to obtain such relief a mere six months after missing their scheduled date of departure was barred unless petitioners could satisfy the "exceptional circumstances" requirement. The statute itself explained that "[t]he term 'exceptional circumstances' refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." INA § 242B(f)(2), 8 U.S.C. § 1252b(f)(2) (repealed 1997).

Petitioners asserted that the "exceptional circumstances" requirement was satisfied in their case because: (1) the enactment of INA § 245(i) in the fall of 1994 enabled petitioners to seek adjustment without first departing the United States; (2) the INS never responded to petitioners' request for an extension of their deadline for voluntary departure; and (3) petitioners were longtime United States residents with three children attending school here.

As a preliminary matter, the IJ granted petitioners' motion for a stay of deportation. Then, on May 13, 1996, the IJ granted petitioners' motion to reopen their deportation proceedings. On the crucial question of whether petitioners had demonstrated "exceptional circumstances," the IJ ruled:

[T]he addition of INA § 245(i), [enabling illegal aliens to seek adjustment without first departing the United States,] was an "exceptional circumstance" which should excuse the [petitioners'] failure to depart during their period of voluntary departure, and should not be an impediment to their seeking adjustment of status in this country.

Two weeks later, the IJ granted petitioners' request for adjustment of status to that of permanent legal residents.

The INS appealed to the Board of Immigration Appeals ("BIA"), arguing that the IJ erred in concluding that the enactment of INA § 245(i) constituted an "exceptional circumstance." On August 5, 1998, the BIA agreed with the INS, vacating the IJ's decisions to reopen the proceeding and to adjust petitioners' status. The BIA specifically rejected the suggestion that "exceptional circumstances" were established by: petitioners' family and community ties; the enactment of INA § 245(i); the fact that petitioners filed adjustment-of-status applications within a few months after the Mardones' priority date had become current; or the fact that, less than a month before their voluntary departure deadline, petitioners had filed a request for an extension of their voluntary deportation deadline to which the INS never responded. Accordingly, the BIA ordered that petitioners be deported.

Petitioners' appeal of the BIA's determination presents four questions: (1) whether the enactment of INA § 245(i) constituted an "exceptional circumstance"; (2) whether the failure of the INS to respond to petitioners' request for an extension of their departure deadline constituted an "exceptional circumstance"; (3) whether the BIA lacked the authority to reverse the IJ's determination that the "exceptional circumstances" requirement was satisfied; and (4) whether the enactment of INA § 245(i) in some fashion superseded

---

1. Paragraph (5) reads:

The relief described in this paragraph is—
(A) voluntary departure under section 1252(b)(1) of this title,

(B) suspension of deportation or voluntary departure under section 1254 of this title, and
(C) adjustment or change of status under section 1255, 1258, or 1259 of this title.
8 U.S.C. § 1252b(e)(5).

INA § 242B's penalty provision, prohibiting among other things adjustment of immigrant status for five years, rendering the question of "exceptional circumstances" under § 242B irrelevant.

## DISCUSSION

■ We review a decision by the BIA denying a motion to reopen deportation proceedings for abuse of discretion. *See Fuentes–Argueta v. INS*, 101 F.3d 867, 870 (2d Cir.1996) (citing *Vargas v. INS*, 938 F.2d 358, 360 (2d Cir.1991)). We review the BIA's underlying conclusions of law *de novo, see Shaar v. INS*, 141 F.3d 953, 955 (9th Cir.1998), with the caveat that the BIA's interpretations of ambiguous provisions of the INA are owed substantial deference unless "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also Shaar*, 141 F.3d at 955–56.

A. *Whether the enactment of § 245(i) constituted an exceptional circumstance.*

■ Petitioners first argue that the BIA erred by failing to conclude that the enactment of § 245(i) prior to their voluntary-departure deadline constituted an exceptional circumstance excusing their failure to comply with that deadline. The INS responds that the BIA did not err in this respect because the "exceptional circumstances" requirement obliges the alien to show that he or she was unable, rather than unwilling, to comply with the departure deadline.

■ We agree with the BIA. INA § 242(f)(2) was clear: " '[E]xceptional circumstances' refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the

alien, but not including less compelling circumstances) *beyond the control of the alien.*" (emphasis added). An alien thus allowed to depart the United States voluntarily was required to do so unless it was *impossible* for physical reasons, such as serious illness, or by reason of a moral imperative, such as the death of an immediate relative. The Mardoneses were confronted with neither.[2]

B. *Whether the failure of the INS to act on petitioners' request for an extension of their departure date constituted an exceptional circumstance.*

■ Petitioners argue next that the failure of the INS to act on their request for an extension of their departure deadline, a request made less than two weeks prior to that deadline, constituted an "exceptional circumstance." We disagree largely for the reasons underlying our conclusion that a change in the statute was not an "exceptional circumstance": the absence of physical or moral impossibility. *See also In re Shaar*, Interim Decision No. 3290, 1996 WL 426889 (BIA July 11, 1996) (pendency of motion to reopen did not constitute exceptional circumstance), *aff'd,* 141 F.3d 953 (9th Cir.1998). Were we to find otherwise, we would thereby vest aliens with the ability continually to forestall their departure deadlines merely by requesting such relief on the eve of the deadline and claiming that its pendency is an "exceptional circumstance."

The particular circumstances of this case provide added support for the BIA's conclusion: The INS was under no statutory or regulatory obligation to respond to petitioners' request for an extension, and petitioners' request was made so close to the deadline that it was highly unlikely that the INS would be able to respond prior to the deadline even were it inclined to do so.

---

**2.** The BIA's ruling was consistent with its prior decision in *In re Shaar*, Interim Decision No. 3290, 1996 WL 426889 (BIA July 11, 1996), *aff'd,* 141 F.3d 953 (9th Cir.1998), in which the BIA rejected the proposition that the pendency of a request for relief—in that case, a motion to reopen deportation proceedings filed just prior to the departure date—constituted an "exceptional circumstance" justifying a failure to timely depart.

We therefore reject petitioners' second argument.

C. *Whether the BIA was obliged to accept the IJ's decision.*

■ Petitioners argue next that the BIA was obliged to accept the IJ's finding of "exceptional circumstances." We do not agree with this assertion either. With the possible exception of credibility determinations,[3] the BIA reviews all of an IJ's determinations *de novo. See In re A–S,* Interim Decision No. 3336, 1998 WL 99553 (BIA Feb. 19, 1998); *In re Adetiba,* 20 I & N Dec. 506, 507 (BIA 1992); *In re Lok,* 18 I & N Dec. 101, 106 (BIA 1981), *aff'd on other grounds,* 681 F.2d 107 (2d Cir.1982). No credibility determinations of the IJ were at issue here.

D. *Whether the enactment of § 245(i) superseded the terms of § 242B.*

■ Petitioners' final contention is that the enactment of § 245(i) granted petitioners an avenue of relief not subject to § 242B's five-year ban irrespective of whether "exceptional circumstances" have been shown. We disagree. Nothing in § 245(i) purported to alter, let alone eliminate, the penalties under § 242B for failure to abide by a voluntary departure order. Petitioners argue that § 245(i) granted illegal aliens permission to seek status adjustment without first departing the United States and that this trumps § 242B's requirement that those who were allowed but failed to depart voluntarily (other than by reason of "exceptional circumstances") cannot apply for a readjustment of their immigrant status for five years. Section 245(i) changed the procedure for adjustment but it did not affect the penalty for failure to meet the commitment to depart voluntarily. The mandatory five-year penalty established in § 242B admits of no exceptions beyond the "exceptional circumstances" that we have held

are not present here. The two statutes as they then were in effect thus can be and therefore must be read consistently: Section 245(i) entitles aliens to seek adjustment of status without leaving the United States but, under § 242B(e)(2)(A), aliens could not seek adjustment here *or* abroad for a five-year period if they had failed to comply with a voluntary departure order. Petitioners were in violation of § 242B(e)(2)(A) and they were therefore ineligible for an adjustment in status for five years beginning December 13, 1994, the date on which they were required by that order to depart.

## CONCLUSION

The decision of the BIA is affirmed.

---

**3.** Because there are no credibility determinations at issue in this appeal, we express no view on the question of the standard of BIA

review where the IJ has made one or more credibility determinations.