

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2003

# Kovalev v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3729

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Kovalev v. Atty Gen USA" (2003). *2003 Decisions.* Paper 334.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/334

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3729

UNITED STATES EX REL. EVGIENI KOVALEV

v.

JOHN ASHCROFT,
AS ATTORNEY GENERAL OF THE UNITED STATES;
JAMES W. ZIGLAR, COMMISSIONER OF
THE IMMIGRATION & NATURALIZATION SERVICE;
WARDEN OF BERKS COUNTY PRISON

Evgieni Kovalev,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 02-cv-04562
(Honorable Michael M. Baylson)

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 28, 2003

Before: SCIRICA, Chief Judge, RENDELL and AMBRO, Circuit Judges

(Filed July 30, 2003)

SCIRICA, <u>Chief</u> <u>Judge</u>.

Appellant Evgieni Kovalev, a native and citizen of Russia, entered the United States on April 30, 1989 as a non-immigrant visitor for pleasure with authorization to remain only until October 12, 1989. He overstayed his tourist visa. In December 1989 he filed his first application for asylum which was denied. In March 1991, the Immigration & Naturalization Service ("INS") initiated deportation proceedings, charging him pursuant to former section 241(a)(1)(C)(i) of the Immigration and Nationality Act ("INA") for remaining in the United States without permission. Kovalev appeared before an Immigration Judge ("IJ") and conceded that he was deportable; however, he again applied for asylum and withholding of deportation. The IJ denied the asylum application on March 30, 1993, but granted Kovalev permission to voluntarily depart to Russia on or before June 30, 1993. The IJ's order provided that, if Kovalev did not depart voluntarily, the privilege would be withdrawn without further notice or proceedings and the order of deportation to Russia would become immediately effective. App. 108-112.

One day before he was scheduled to voluntarily depart Kovalev appeared at an INS office and signed a Voluntary Departure Notice, which extended his departure date to July 7, 1993. The Voluntary Departure Notice specifically informed him of the consequences of failing to depart, including that he would be ineligible to apply for

certain forms of relief, including adjustment of status, for five years after the scheduled date of departure. Kovalev was given oral notice of the contents of the Voluntary Departure Notice in English only. Kovalev did not leave the United States on July 7, 1993. Accordingly, on September 14, 1993, the INS issued a Warrant of Deportation. On April 11, 1994, the INS sent Kovalev a "bag and baggage" letter telling him to report for deportation on a scheduled date. Kovalev did not report to the INS Deportation Unit on the date scheduled as instructed.

On March 31, 1998, Kovalev applied to reopen the deportation proceedings and for suspension of deportation under former INA § 244(a) and Section 203 of the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"). The INS opposed the motion, urging the IJ to deny it on discretionary grounds. On August 31, 1998, the IJ denied the motion to reopen as a matter of discretion, because Kovalev previously had failed to depart voluntarily as promised. App. 192.

On September 23, 1999, the Board of Immigration Appeals dismissed Kovalev's appeal, holding that the IJ had not abused his discretion. The Board explained: "While section 309(g) of [the Illegal Immigration Reform and Immigrant Responsibility Act] as amended by section 203(c) of NACARA, provides that motions to reopen filed by certain aliens, such as respondent, are exempt from time and number limitations, it does not exempt them from showing that they merit reopening as a matter of discretion." App. 203. Kovalev did not seek review of the BIA's order in a court of appeals.

On March 27, 2001, Kovalev's adult daughter became a naturalized citizen. In April or May 2001, she submitted a Form I-130 Petition for Alien Relative as a prerequisite for Kovalev to adjust his status to that of a lawful permanent resident. At the same time Kovalev submitted a Form I-485 application to adjust his status. On June 12, 2002, during his interview pursuant to this application, the INS learned of the outstanding deportation order and took Kovalev into custody.

Less than a month later, on July 9, 2002, Kovalev, through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in United States District Court for the Eastern District of Pennsylvania. Kovalev sought release from custody pending the BIA's consideration of a motion to reopen to consider his application for adjustment of status. He also asked that the March 1993 deportation order be invalidated. While the habeas petition was pending the INS received travel documents for Kovalev from the Russian Consulate.[1] In an order entered on September 30, 2002, the District Court denied the habeas petition. Kovalev then filed this appeal.

We will affirm. Kovalev is in custody pursuant to a final order of deportation. In order to prevail in federal habeas Kovalev must show that the final order of deportation is "in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2241(c)(3). It is not enough to show abuse of discretion and thus a federal habeas petition is not an ideal vehicle for challenging a discretionary decision of the Board of Immigration

_____

[1]The travel documents expired on October 1, 2002.

4

Appeals.  Cf. Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 314 n.38 (2001) ("[T]he scope of review on habeas is considerably more limited than on [Administrative Procedures Act]-style review.").  For a full consideration of his issues Kovalev should have petitioned for review of the BIA's September 23, 1999 decision.  Any petition for review submitted now would be untimely, unfortunately.  See Malvoisin v. Immigration & Naturalization Serv., 268 F.3d 74, 75 (2d Cir. 2001) (thirty day appeal period of permanent rules, 8 U.S.C. § 1252(b)(1), is mandatory and jurisdictional).

We have carefully considered the record, and Kovalev's arguments on appeal in the context of whether the denial of discretionary relief here involved a violation of federal law or the Constitution.  See Chmakov v. Blackman, 266 F.3d 210, 214 (3d Cir. 2001) (federal courts retain section 2241 habeas jurisdiction over petitions from criminal and non-criminal aliens alike).  See also Liu v. Immigration & Naturalization Serv., 293 F.3d 36, 40 (2d Cir. 2002) (same).  Kovalev otherwise does not qualify for habeas relief.  Kovalev has argued that the March 1993 order of deportation violates 8 U.S.C. § 1252b(e)(2) (repealed) because he did not receive an adequate warning in Russian about the consequences of failing to depart voluntarily.  He also has argued that NACARA *mandates* discretionary relief even though he failed to voluntarily depart.  We conclude, however, that these arguments, although cognizable in federal habeas, do not provide a basis for habeas relief.

5

The argument that section 1252b(e)(2)(B) was violated when Kovalev did not receive the proper warnings in Russian concerning the consequences of failing to voluntarily depart does not warrant habeas relief for three reasons. First, he did not raise this claim before the IJ or the BIA when he filed his motion to reopen in 1998. Exhaustion of administrative remedies is a prerequisite to habeas relief. Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981) (per curiam ); Yi v. Maugans, 24 F.3d 500, 503-04 (3d Cir. 1994) (addressing former 8 U.S.C. § 1105a(c)). When he applied to reopen deportation proceedings and for suspension of deportation Kovalev should have presented his argument that, because of a language problem, he did not understand the Voluntary Departure Notice.

Second, section 1252b(e)(2) is irrelevant to the issue presented by the habeas petition.[2] Under former section 1252b(e), any alien allowed to depart voluntarily who remained in the United States after the scheduled date of departure, other than because of exceptional circumstances, was not eligible for, among other things, suspension of deportation under INA § 1254 or adjustment or change of status under INA §§ 1255, 1258, or 1259 for a period of five years after the scheduled date of departure. See generally Mardones v. McElroy, 197 F.3d 619, 622-23 & n.1 (2d Cir. 1999). However, if proper warnings were not given in a language the alien understood, he or she would not

---

[2]The pertinent subparagraphs of former section 1252b(e)(2) are set forth on page 14 of the District Court's Memorandum. Because we write only for the parties we will not repeat the statute here.

be prevented from seeking these forms of relief during the five year period.  The statute is irrelevant to Kovalev's request for habeas relief because, even if there was a failure to give notice in a language Kovalev understood, the statute would not mandate, for example, adjustment of status or suspension of deportation.  It would merely, if applicable, invalidate the five-year bar with respect to *applying for* adjustment of status or suspension of deportation.[3]

Third, the statute requires only that notice be provided in a language the alien understands.  Kovalev's assertion at this late stage in the proceedings that he needed a translation into Russian is not convincing enough to warrant habeas relief.  The District Court found:

> Given that Kovalev has lived in the United States since 1989, had two separate, privately retained, lawyers during his prior INS proceedings, and signed his name several times to documents acknowledging his waiver of certain rights, the Court cannot accept Kovalev's arguments that he did not have any knowledge that one consequence of his ignoring the prior voluntary deportation orders was to put his continued presence in this country at risk.  Further, Kovalev's testimony, that his prior lawyers kept reassuring him that they would take care of things, does not provide any legally justifiable reason for this Court to find that Kovalev himself did not understand what was going on before the INS, or that he was completely unaware of the consequences of his ignoring the deportation orders.

(District Court Memorandum, at ¶ 41.)  We agree and find no error in this conclusion by

---

[3]Kovalev has indicated in his reply brief that a motion to reopen is pending in New York Immigration Court, apparently concerning an application to adjust status.  Habeas relief is unavailable with respect to the pending motion to reopen because Kovalev has not yet exhausted administrative remedies.  Bradshaw, 682 F.2d at 1052; Yi, 24 F.3d at 503-04.

the District Court.

With respect to Kovalev's second claim, NACARA does not mandate relief; it only made Kovalev eligible to apply for relief where he otherwise would have been ineligible. Prior to 1996, under section 244(a) of the Immigration and Nationality Act, the Attorney General could grant suspension of deportation, assuming the good moral character and hardship requirements were met, to an alien who had been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of a suspension of deportation application. 28 U.S.C. § 1254(a)(1) (repealed). The Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") created a "stop-time" rule, stopping the clock upon the initiation of deportation proceedings. See 8 U.S.C. § 1101 note (IIRIRA § 309(c)(5)); see generally Pinho v. Immigration & Naturalization Serv., 249 F.3d 183, 188 (3d Cir. 2001). Previously, aliens involved in deportation proceedings that were significantly delayed could accumulate sufficient continuous physical presence to qualify for suspension of deportation by applying for suspension of deportation well after deportation proceedings were initiated. See Useinovic v. Immigration & Naturalization Serv., 313 F.3d 1025, 1033-34 (7th Cir. 2002).

The Nicaraguan Adjustment and Central American Relief Act, Pub.L. No. 105-100, tit. II, 111 Stat. 2160, §§ 201 et seq. (1997), allowed Nicaraguans and Cubans to adjust their immigration status automatically. It also exempted certain other aliens, based

on their national origin, from the new stop-time rule. Pursuant to section 203(a) of NACARA, the new stop-time rule, for a period of time, did not apply to nationals of several countries, including the Soviet Union, Russia, and any republic of the former Soviet Union. See Appiah v. Immigration & Naturalization Serv., 202 F.3d 704, 708 (4th Cir. 2000) (citing NACARA § 203(a), 111 Stat. at 2196-97).

Kovalev was prima facie eligible to file a motion to reopen because he comes from a NACARA-specified country, he entered the United States before December 31, 1990, and he applied for asylum before December 31, 1991. Useinovic, 313 F.3d at 1034 (citing NACARA § 203(a)(1); 8 C.F.R. § 3.43(d)(4)). NACARA allowed Kovalev to file one "timely" motion to reopen his deportation proceedings, see Useinovic, 313 F.3d at 1034-35 n.9 (discussing NACARA's special provision for allowing motion to reopen notwithstanding 90-day time limit of 8 C.F.R. § 3.23), but it did not guarantee a favorable exercise of discretion under INA § 244(a). NACARA did not affect how discretion was to be exercised by the Immigration Judge in deciding whether a motion to reopen and application for suspension of deportation should be granted. Accordingly, NACARA was not violated here because Kovalev was allowed to file his motion to reopen and application for suspension of deportation, and his request for relief from the final order of deportation was duly considered by an immigration judge and the Board of Immigration Appeals.

We find no other errors in this case warranting habeas relief. Aliens are entitled to substantive due process. See Chi Thon Ngo v. Immigration & Naturalization Serv., 192 F.3d 390, 396 (3d Cir. 1999). The decision of the Immigration Judge to deny the motion to reopen and application for suspension of deportation as a matter of discretion was not arbitrary and capricious (Appellant's Brief, at 19), and thus not a violation of substantive due process. A substantive due process violation is established only if the government's actions are irrational or motivated by constitutionally impermissible factors. See Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 590-91 (3d Cir. 1998).

The IJ refused to "condone" Kovalev's failure to depart voluntarily as promised, and Kovalev has pointed to no authority to indicate that the IJ's emphasis on this factor was constitutionally impermissible. Only exceptional circumstances beyond the control of an alien excuse the failure to depart voluntarily. Mardones v. McElroy, 197 F.3d at 624 ("An alien ... allowed to depart the United States voluntarily was required to do so unless it was impossible for physical reasons, such as serious illness, or by reason of a moral imperative, such as the death of an immediate relative.") The record does not show exceptional circumstances; it shows an attempt to delay departure in an effort to remain in the country until such time as a visa might become available. See Fan Wan Keung v. Immigration & Naturalization Serv., 434 F.2d 301 (2d Cir. 1970) (discussing improper manipulation of privilege of voluntary departure). The IJ's decision comported with applicable law and was not arbitrary and capricious.

10

Finally, we agree with the District Court that Kovalev's post-deportation order detention is lawful and that there is a significant likelihood that he will be removed in the foreseeable future. See Zadvydas v. Davis, 533 U.S. 678, 701 (2001). His Russian citizenship has been established and travel documents are obtainable. "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal." Pelich v. Immigration & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003). Furthermore, the issue whether Kovalev is entitled to a stay of deportation pending the outcome of his motion to reopen to adjust his status is moot because there is no merit to the habeas petition.[4] The pending motion to reopen and application to adjust status are not presently before the Court.

We will affirm the order of the District Court dismissing the habeas petition.


/s/ Anthony J. Scirica
Chief Judge

---

[4]Kovalev filed a motion to stay deportation in this Court, which we denied.