# United States Court of Appeals
## For the First Circuit

No. 04-1649

JEAN-RONY JUPITER, A/K/A JEAN R. JUPITER,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Chief Judge</u>,

Torruella and Selya, <u>Circuit Judges</u>.

<u>Raymond Kline</u> on brief for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, <u>Christopher C. Fuller</u>, Senior Litigation Counsel, and <u>William C. Minick</u>, Attorney, Office of Immigration Litigation, on brief for respondent.

February 8, 2005

**SELYA**, **Circuit Judge**. The petitioner, Jean-Rony Jupiter, seeks review of a final order of the Board of Immigration Appeals (BIA) denying his second motion to reopen his removal proceeding. His petition founders on procedural shoals.

The facts are straightforward. In 1995, the petitioner, a Haitian national, entered the United States illegally and became a resident of the Virgin Islands. Two years later, the Immigration and Naturalization Service (INS) instituted a removal proceeding.[1] At that point, the petitioner cross-applied for asylum.

One week before the scheduled hearing, the petitioner's attorney, Warren M. Williams, informed the immigration court that the petitioner wished to withdraw his asylum application and to effect a voluntary departure from the United States within the next four months. At the subsequent hearing, the petitioner appeared alongside several other similarly situated aliens, each of whom had made an identical proposal. The Immigration Judge (IJ) granted the requests and allowed the petitioner to depart voluntarily from the United States on or before November 30, 1998.

In short order, the petitioner retained a new attorney, Vincent A. Fuller, Jr. On September 25, 1998, he moved to reopen his removal proceeding. In an affidavit filed in support of this

---

[1]The Homeland Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)), abolished the INS and transferred many of its duties to the Department of Homeland Security. See Lattab v. Ashcroft, 384 F.3d 8, 13 n.2 (1st Cir. 2004).

-2-

motion, he claimed that his original lawyer had failed to advise him fully about his rights.

The IJ denied the motion "without prejudice," noting that the petitioner had "failed to comply" with the procedural requirements attendant to the filing of a motion to reopen premised on ineffectiveness of counsel. See Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA) (explaining that an alien moving to reopen on the ground of ineffective assistance of counsel must, inter alia, provide his former attorney with notice and an opportunity to respond), review denied, 857 F.2d 10 (1st Cir. 1988). The denial of the motion to reopen took place on October 21, 1998 (slightly over one month before the voluntary departure deadline).

The petitioner did not depart within the allotted period. He remained in the United States, moved to Atlanta (without notifying the INS), married an American citizen, and fathered a child.

In 1999, the petitioner's wife filed an I-130 "immediate relative" petition in an attempt to lay the groundwork for adjusting the petitioner's status to that of a lawful permanent resident. The INS accepted that petition in 2002. On January 13, 2003, the petitioner, through yet another attorney, filed a second motion to reopen his removal proceeding.[2] He proposed reopening in

_____

[2]The petitioner has eschewed any argument that this motion was not a second motion because the IJ had denied his first motion to reopen "without prejudice." In all events, that argument would not

order to permit him to file a change of status application premised upon his marriage. In the body of the motion, his counsel asseverated that exceptional circumstances had prevented the petitioner from complying with the voluntary departure deadline. Those circumstances were twofold: (i) Fuller had never informed the petitioner of the denial of his first motion to reopen, and the petitioner had assumed that its pendency entitled him to remain in the United States; and (ii) human rights violations in Haiti were sufficiently pervasive to warrant non-enforcement of the removal order.[3] In a terse handwritten order, the IJ denied the petitioner's motion. The order limned two independently sufficient

wash. The petitioner waited over four years before filing his second motion to reopen. That motion made no attempt either to remedy the Lozada defects that prompted the denial of his original motion or to reallege the claim of ineffective assistance of counsel. Instead, his new motion totally abandoned the ineffective assistance claim in favor of a wholly different legal theory premised on entirely different facts. If the IJ's order in response to the petitioner's first motion to reopen left open the possibility of a second motion — a matter on which we take no view — it did so only "insomuch as [the petitioner] failed to comply with . . . Lozada." The IJ's use of the phrase "without prejudice" did not give the petitioner an open-ended ticket to challenge the order of removal at any future time and on any conceivable grounds.

[3]As to the latter circumstance, the motion papers intimated that the petitioner was entitled to relief under the Haitian Refugee Immigration Fairness Act of 1998 (HRIFA), Pub. L. 105-277, div. A, sec. 101(h), § 901 et seq., 112 Stat. 2681, 2681-538 to -542. This proved to be a red herring, and the petitioner subsequently abandoned the HRIFA claim. Although we need not deal with it here, we note that the petitioner plainly does not satisfy HRIFA's eligibility criteria. See id. § 902(b)(1), 112 Stat. at 2681-538 (conditioning eligibility for special prophylaxis on, inter alia, an alien's having been paroled into the United States or having applied for asylum before December 31, 1995).

-4-

grounds: (i) this was the petitioner's second motion to reopen; and (ii) reopening would be futile because the petitioner had overstayed his voluntary departure date and, accordingly, was barred from readjusting his status. The IJ did not comment on the fact that the motion apparently had been filed out of time. See 8 C.F.R. § 1003.23(a)(1) (ordaining that a motion to reopen must be filed within ninety days of the date of entry of a final administrative order).

The petitioner took a timely appeal to the BIA. He did not address the first ground relied on by the IJ and only obliquely attempted to counter the second ground. Instead, he reiterated the same claims he had made in his second motion to reopen. The BIA affirmed without opinion on April 21, 2004. This petition for judicial review followed.

The abuse of discretion standard governs judicial review of the denial of a motion to reopen, regardless of the substantive claim involved. See INS v. Doherty, 502 U.S. 314, 323 (1992). Where, as here, the BIA has employed its streamlined "affirmance without opinion" procedure, see 8 C.F.R. § 1003.1(e)(4), we review directly the IJ's decision as if it were the decision of the BIA. See Keo v. Ashcroft, 341 F.3d 57, 60 (1st Cir. 2003); El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir. 2003). In so doing, we focus not on the merits of the petitioner's excludability, but, rather, on the IJ's decision to deny the motion to reopen. Carter v. INS,

-5-

90 F.3d 14, 16-17 (1st Cir. 1996). Here, then, we proceed to examine the two grounds underpinning the IJ's order.

The first ground is that the petitioner's motion was a second motion to reopen and, thus, numerically barred. The applicable regulation places a numerical ceiling of one on the number of motions to reopen that a party may file before an IJ. See 8 C.F.R. § 1003.23(b)(1) (stating that "a party may file only . . . one motion to reopen proceedings").[4] The petitioner has never disputed that his January 13, 2003 motion to reopen was numerically barred under this regulation (after all, he had filed a previous motion to reopen on September 25, 1998). Moreover, the petitioner utterly failed to challenge this finding on appeal to the BIA. Consequently, the IJ's determination that the petitioner's second motion to reopen was numerically barred by 8 C.F.R. § 1003.23(b)(1) has become final and unreviewable. See Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) (explaining that theories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review); Sousa v. INS, 226 F.3d 28, 31-32 (1st Cir. 2000) (similar); see also 8 U.S.C. §

---

[4]This limitation may be relaxed if a petitioner can show either that conditions in his native land have changed materially or that the underlying order of removal was entered in absentia because of the petitioner's inability to appear. 8 C.F.R. § 1003.23(b)(4)(i-ii). The petitioner makes no developed argument that either of these exceptions applies in this case. The regulations provide no grounds for relief based on changes in a petitioner's marital status or domestic circumstances.

1252(d)(1) ("A court may review a final order of removal only if .

. . the alien has exhausted all administrative remedies available

to the alien as of right.").[5]

The IJ's alternative basis for denying the petitioner's

second motion to reopen posited that the motion was futile because

the petitioner's non-observance of the voluntary departure deadline

rendered him ineligible for the relief ultimately sought.   The

applicable statute provides in pertinent part:

> If an alien is permitted to depart voluntarily
> under this section and fails voluntarily to
> depart the United States within the time
> period specified, the alien shall be . . .
> ineligible for a period of 10 years for any
> further relief under this section and sections
> 1229b, 1255 [adjustment of status], 1258, and
> 1259 of this title.

8 U.S.C. § 1229c(d).   The petitioner falls squarely within the

plain language of this statute and, thus, the IJ supportably found

the petitioner statutorily ineligible for adjustment of status

because of his earlier failure to adhere to the voluntary departure

deadline.

The petitioner attempts to confess and avoid.  He admits

that he did not depart within the allotted period but asserts that

exceptional circumstances excused his decision to ignore the

_____

[5]At the expense of carting coal to Newcastle, we add that the petitioner has also waived this point by neglecting to raise it in his opening brief to this court.  See, e.g., Mediouni v. INS, 314 F.3d 24, 28 n.5 (1st Cir. 2002); Sandstrom v. ChemLawn Corp., 904 F.2d 83, 89 n.6 (1st Cir. 1990).

-7-

deadline.  The principal circumstance to which he adverts is that Fuller, his counsel at the time, neglected to notify him when his first motion to reopen was denied.

Assuming, for argument's sake, that exceptional circumstances might justify the granting of a second motion to reopen and that a failure to reopen in the face of exceptional circumstances would be judicially reviewable, the petitioner's claim is nonetheless empty.  There is simply no evidence in the record that the petitioner did not receive notice of the denial. His second motion to reopen was unaccompanied by an affidavit or sworn statement attesting to the facts as represented by his counsel in the body of the motion (counsel represented, without record support, that the petitioner was "unaware" that the IJ had denied his prior motion to reopen and so, "[b]elieving that his case was still pending . . . remained in the United States beyond the voluntary departure deadline").  Counsel's factual assertions in pleadings or legal memoranda are not evidence and do not establish material facts.  See, e.g., Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001); United States v. Fetlow, 21 F.3d 243, 248 (8th Cir. 1994); cf. 8 C.F.R. § 1003.23(b)(3) (providing in general that motions to reopen addressed to an IJ "shall be supported by affidavits and other evidentiary material").  This failure to establish a lack of notice undermines the petitioner's claim.

At any rate, the claim is bootless. Even if the petitioner believed that his motion to reopen had never been adjudicated, he would not be eligible for relief. The fact that an unadjudicated motion is pending does not constitute an exceptional circumstance sufficient to blunt the force of section 1229c(d) and excuse a failure to depart voluntarily pursuant to an existing order. See, e.g., Mardones v. McElroy, 197 F.3d 619, 624 (2d Cir. 1999); Stewart v. INS, 181 F.3d 587, 596 (4th Cir. 1999); Shaar v. INS, 141 F.3d 953, 957 (9th Cir. 1998). To satisfy the "exceptional circumstances" requirement, an alien must show that he was unable to comply with the departure deadline. Mardones, 197 F.3d at 624. There was nothing of legal significance that prevented the petitioner from departing by November 30, 1998; at best, he simply took it upon himself to stay in the United States while awaiting the outcome of his motion to reopen. So viewed, the record adequately evinces that the petitioner was unwilling, rather than unable, to depart. Thus, the IJ did not abuse her discretion in denying the petitioner's second motion to reopen on the alternative ground that the petitioner was statutorily ineligible for adjustment of status.

There is one final point. The petitioner attempts to salvage matters by invoking the Due Process Clause. He argues that by failing to extend the voluntary departure deadline, the IJ deprived him of his constitutional right to due process.

To be sure, this claim was not raised below. Still, an asserted denial of due process may, in certain limited circumstances, be exempt from the ordinary exhaustion requirement. See, e.g., Ravindran v. INS, 976 F.2d 754, 762 (1st Cir. 1992). These circumstances are rare and are restricted to claims that are beyond the authority of the agency to adjudicate. See id. For purposes of this case, however, we need not probe that procedural point too deeply. Even assuming, for argument's sake, that we have jurisdiction to review such a claim, the record in this case is devoid of any sufficient factual support for it.

The petitioner's purported due process claim is nothing more than a reformulated attack on the IJ's discretionary refusal to extend the voluntary departure deadline after the fact (or, more precisely put, to overlook the petitioner's violation of that deadline). That reframed attack presents no substantial constitutional question. See, e.g., Bernal-Vallejo v. INS, 195 F.3d 56, 63 (1st Cir. 1999).

In all events, the petitioner cannot premise a colorable due process claim solely on the denial of an opportunity to depart later. For due process to attach, there must be a cognizable liberty or property interest at stake. See Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). None exists here. "Adjustment of status is not an entitlement," but, rather, a matter of administrative discretion. Henry v. INS, 74 F.3d 1, 7 (1st Cir.

-10-

1996); see also INS v. Abudu, 485 U.S. 94, 105 (1988). So too voluntary departure, which is a privilege, not a right. See Tamas-Mercea v. Reno, 222 F.3d 417, 427 (7th Cir. 2000); see also 8 U.S.C. § 1229c(f) (depriving federal courts of appellate jurisdiction over denials of voluntary departure). There is no property interest involved and, because the relief of voluntary departure (like the relief of adjustment of status) is essentially discretionary, there is no cognizable liberty interest in that remedy. See Ali v. Ashcroft, 366 F.3d 407, 412 (6th Cir. 2004) (explaining that an IJ's failure to grant voluntary departure does not involve a deprivation of a petitioner's liberty interest); see also Finlay v. INS, 210 F.3d 556, 557 (5th Cir. 2000) (explaining that "the denial of discretionary relief does not rise to the level of a constitutional violation, even if [the alien] had been eligible for it") (citations omitted).

We need go no further.[6] For the reasons set forth above, the petition for judicial review must be denied.

**So Ordered**.

---

[6]For the first time, the petitioner raises before us the possibility that his voluntary departure deadline should be equitably tolled. We lack jurisdiction to consider this previously unraised contention. See Makhoul, 387 F.3d at 80; Sousa, 226 F.3d at 31-32; see also 8 U.S.C. § 1252(d)(1).