NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0744n.06
Filed: October 18, 2007

Case No. 05-4639

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ARTOR SHTYLLAKU, | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM A REINSTATEMENT |
| | ) | ORDER OF THE |
| ALBERTO GONZALES, United States | ) | DEPARTMENT OF |
| Attorney General, | ) | HOMELAND SECURITY |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: BATCHELDER and GILMAN, Circuit Judges; VARLAN,[*] District Judge.

**THOMAS A. VARLAN, District Judge.** Petitioner Artor Shtyllaku petitions this Court for review of the reinstatement of a removal order entered by the Department of Homeland Security ("DHS"). For the reasons that follow, we **DENY** the petition for review.

I.     BACKGROUND

Artor Shtyllaku ("Shtyllaku") is a native and citizen of Albania who first entered the United States, using a fraudulent passport, on February 17, 1997. Shtyllaku applied for asylum and withholding of removal after the former Immigration and Naturalization Service ("INS") placed him into removal proceedings. On July 23, 1998, an immigration judge ("IJ") issued an order of removal denying Shtyllaku's applications for relief. The IJ also granted him the privilege of voluntary

---

[*]Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

departure, with an alternative order of removal to Albania. Shtyllaku appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On June 28, 2002, the BIA affirmed the IJ's decision. The BIA further ordered Shtyllaku's voluntary departure within 30 days. Otherwise, he would be removed as provided in the IJ's order and subject to penalties, including ineligibility for a period of 10 years for any further relief from removal.

Though Shtyllaku attempted to leave the United States within the 30-day period, he was unable to do so due to the unavailability of airline tickets to Albania. He also discovered that his passport had recently expired and required renewal before he could to return to Albania. On or about July 26, 2002, only days before the voluntary departure deadline of July 29, 2002, Shtyllaku filed a request with the INS District Director for a 60-day extension to his voluntary departure period. On August 8, 2002, Shtyllaku married Gloria Rios, a United States citizen. He then left the United States on or about August 26, 2002, nearly a month after his 30-day period for voluntary departure had expired. Upon returning to Albania, Shtyllaku filed an application for a nonimmigrant visa to return to the United States based on his marriage to a United States citizen. Despite direct questions that appeared on the visa application, Shtyllaku failed to disclose that he had previously been the subject of a deportation hearing. The American Embassy in Tirana granted his application on June 25, 2003, and Shtyllaku reentered the United States on or about July 2, 2003.

On August 18, 2004, Shtyllaku filed an application to adjust his status to that of a permanent resident. On June 2, 2005, Shtyllaku was informed at an initial hearing that he would need to apply for a waiver due to his initial entry to the United States in 1997. At the second hearing on December 6, 2005, the DHS issued a Notice of Intent to Shtyllaku and entered a Decision to Reinstate Prior Order of Deportation on the basis that he stayed beyond the 30 days permitted for voluntary

2

departure and reentered the United States without the Attorney General's permission. Subsequently, Shtyllaku petitioned this Court for review of the reinstatement of the removal order entered by the DHS.

## II.    DISCUSSION

### A.    Jurisdiction

United States Immigration and Customs Enforcement ("ICE") within the DHS has the authority to issue reinstatement orders pursuant to Immigration and Nationality Act ("INA") § 241(a)(5), 8 U.S.C. § 1231(a)(5) (2000). This Court has jurisdiction to review ICE's reinstatement orders pursuant to INA § 242(a)(1), 8 U.S.C. § 1252(a)(1). *See also Warner v. Ashcroft*, 381 F.3d 534, 536-37 (6th Cir. 2004) (reviewing the reinstatement of an order of removal); *Bejjani v. INS*, 271 F.3d 670, 674 (6th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422 (2006) (finding that the authority to review orders of removal also applies to orders of reinstatement). In general, a prior order of removal is not reviewable once reinstated. INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."). However, amendments made to the INA in 2005 permit the validity of the underlying order to be challenged on constitutional or legal grounds. INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).

### B.    Standard of Review

In the present case, the constitutional and statutory claims are subject to *de novo* review. *See Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003); *see also Neziraj v. Gonzales*, 207 F. App'x 550, 555 (6th Cir. 2006). However, the Court gives deference to the Attorney General's interpretation of the INA. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (citing *Chevron, U.S.A., Inc., v. Natural Res. Def. Council., Inc.*, 467 U.S. 837, 843 (1984)). Judicial deference is particularly appropriate in light of the INA's express provision that the "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." INA § 103(a)(1), 8 U.S.C. § 1103(a)(1).

**C.    DHS's Reinstatement of the 1998 Removal Order**

Shtyllaku argues that the DHS improperly reinstated the 1998 removal order. The INA provides that an alien who reenters the United States illegally after leaving voluntarily under an order of removal "shall be removed under the prior order at any time after the reentry." INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). In deciding whether an alien is subject to the statute, an immigration officer shall determine: (1) "[w]hether the alien has been subject to a prior order of removal," (2) "whether the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal," and (3) "[w]hether the alien unlawfully reentered the United States." 8 C.F.R. § 1241.8(a) (2006). The Attorney General may permit an alien to depart voluntarily the United States at the conclusion of removal proceedings if certain conditions are met in addition to the IJ entering an order granting voluntary departure. *See* INA § 240B(b)(1), 8 U.S.C. § 1229c(b)(1); 8 C.F.R. § 1240.26(c). "Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the [BIA] is only within the jurisdiction"

4

of the DHS District Director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs. 8 C.F.R. 1240.26(f).

Shtyllaku opines that the original order of removal against him was invalid because he was granted permission to depart voluntarily from the United States. This argument is unpersuasive because an alien is still subject to an order for removal, for purposes of reinstatement, regardless of whether there was permission to voluntarily depart. INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). The DHS's ability to reinstate a prior order of removal applies equally to aliens who are removed as it does to those that are allowed to depart voluntarily. *Rafaelano v. Wilson*, 471 F.3d 1091, 1097 n.5 (9th Cir. 2006). Shtyllaku was subject to a valid order of removal and given the privilege of voluntary departure as an alternative to removal by the government. Thus, the fact he was permitted to depart voluntarily does not limit the applicability of the reinstatement provision in the present case.

Shtyllaku additionally argues that the original order of removal was invalid because the INS did not respond to his request for a 60-day extension to the voluntary departure period. Shtyllaku's argument fails because a pending request for an extension of the voluntary departure period does not invalidate, toll, or otherwise impact a removal order. *See Dekoladenu v. Gonzales*, 459 F.3d 500, 506-07 (4th Cir. 2006) (finding that filing a motion to reopen an order of removal does not automatically toll the voluntary departure period); *Jupiter v. Ashcroft*, 396 F.3d 487, 491-92 (1st Cir. 2005) ("The fact that an unadjudicated motion is pending does not . . . excuse a failure to depart voluntarily pursuant to an existing order."). Furthermore, the INS had no duty to respond to Shtyllaku's request. *See Mardones v. McElroy*, 197 F.3d 619, 624 (2d Cir. 1999) (finding that the "INS was under no statutory or regulatory obligation to respond to petitioner's request for an

5

extension"). Accordingly, the mere request for an extension of the voluntary departure period never invalidated or tolled Shtyllaku's original order of removal.

Shtyllaku further argues that reinstatement was improper because he did not unlawfully reenter the United States. Specifically, he suggests that his entry was not illegal in that he possessed a K-3 nonimmigrant visa. An alien removed from the United States is prohibited from reentering the country for a period of at least five years unless he receives permission to return from the Attorney General. *See* INA § 212(a)(9)(A)(ii)-(iii), 8 U.S.C. § 1182(a)(9)(ii)-(iii); 8 C.F.R. 1212.2(a). Shtyllaku reentered the United States less than a year after his voluntary departure in August of 2002. Thus, Shtyllaku's reentry was unlawful absent permission of the Attorney General.

Entry through inspection by an immigration officer does not take the place of authorization from the Attorney General. *See United States v. Sanchez-Milmam*, 305 F.3d 310, 313-14 (5th Cir. 2002) ("[E]ven if an alien successfully obtains a visa from the State Department, it does not act as a substitute for the consent of the Attorney General"); *United States v. Martus*, 138 F.3d 95, 97 (2d Cir. 1998) ("There is no statute or regulation that expressly authorizes a border guard to grant the required express consent of the Attorney General."); *Lazarescu v. United States*, 199 F.2d 898, 901 (4th Cir. 1952) (finding that entry through inspection by an immigration officer did not make entry lawful). As Shtyllaku reentered without obtaining permission of the Attorney General, his reentry was not authorized and, therefore, illegal.

Finally, Shtyllaku mistakenly presumes that the validity of the K-3 nonimmigrant visa should impact this Court's analysis. As previously discussed, Shtyllaku's entry was illegal regardless of whether the visa obtained was valid. As provided by the INA, it was necessary for Shtyllaku to obtain permission from the Attorney General prior to reentering the United States. *See* INA §

6

212(a)(9)(A)(ii)-(iii), 8 U.S.C. § 1182(a)(9)(ii)-(iii). Because no such permission was obtained, Shtyllaku's July 2, 2003 entry into the United States was illegal despite his possession of a K-3 nonimmigrant visa issued by the American Embassy in Tirana.

**D.      The 1998 Removal Order and Due Process**

Shtyllaku also makes the constitutional claim that the District Director's failure to respond to his request for an extension of time to depart voluntarily amounted to a due process violation. Although removal proceedings of aliens require due process, *Warner*, 381 F.3d at 538 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)), for due process to attach, there must be a cognizable liberty or property interest at stake. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). "[A]liens have no fundamental right to discretionary relief from removal for purposes of due process and equal protection. . . . Because there is no constitutionally protected liberty interest in the discretionary privilege of voluntary departure, the due process claim fails." *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1167 (9th Cir. 2004). The privilege of voluntary departure is a matter of administrative discretion; therefore, it is not a property or liberty interest. *Jupiter*, 396 F.3d at 492 (finding no property interest for due process purposes in light of the discretionary nature of voluntary departure); *Ali v. Ashcroft*, 366 F.3d 407, 412 (6th Cir. 2004) (quoting *Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001)) (finding no liberty interest in the failure to grant discretionary relief like voluntary departure). Accordingly, Shtyllaku's due process rights were not violated because he had no liberty or property interest at stake.

Furthermore, "proof of prejudice is necessary to establish a due process violation in an immigration hearing." *Warner*, 381 F.3d at 539. Any alien who voluntarily departs under a removal order and thereafter illegally returns to the United States is subject to reinstatement. INA §

7

241(a)(5), 8 U.S.C. § 1231(a)(5).  Even if Shtyllaku had departed within the allotted period of time or the District Director had extended his time, he would have departed under a removal order and still have been subject to reinstatement of the prior removal order.  There was no prejudice in the District Director's failure to respond to the extension request as is required to establish a due process violation.  Thus, Shtyllaku cannot prevail on his due process claim.

III.    **CONCLUSION**

For the foregoing reasons, we **DENY** the petition for review.