NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0571n.06
Case No. 25-3205

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 08, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| OSCAR GEOVANNIY RAMOS-RAMOS, | ) | |
| Petitioner, | ) ) ) | ON PETITION FOR REVIEW OF REINSTATEMENT OF AN ORDER OF REMOVAL OF THE DEPARTMENT OF HOMELAND SECURITY |
| v. | ) ) ) | |
| SECRETARY, DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, U.S. Attorney General, | ) ) ) ) | |
| Respondents. | ) ) | O P I N I O N |

Before: GIBBONS, STRANCH, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Petitioner Oscar Geovanniy Ramos-Ramos seeks review of an order issued by the Department of Homeland Security reinstating an earlier order of removal. For the following reasons, we **DENY** the petition for review.

I.

Ramos-Ramos is a native and citizen of Honduras who first entered the United States at a date and place unknown. On May 24, 2012, Border Patrol agents arrested Ramos-Ramos in Detroit, Michigan, and detained him pending removal proceedings. On July 3, 2012, the immigration judge ("IJ") presiding over his removal proceedings granted Ramos-Ramos's application for voluntary departure "with an alternate order of removal to Honduras." The court provided Ramos-Ramos with a written notice explaining that if he "fail[ed] to voluntarily depart the United States" by July 17, 2012, "a removal order [would] automatically be entered against

[him]." Ramos-Ramos was still in federal custody when the voluntary departure order expired. Two days later, the Department of Homeland Security ("DHS") issued a warrant for his deportation. He was removed from the country on August 8, 2012.

Ramos-Ramos reentered the United States sometime later that year. On October 8, 2012, DHS reinstated the removal order. Ramos-Ramos received a DHS Form I-871 "Notice of Intent/Decision to Reinstate Prior Order," which explained that he was subject to deportation because he had reentered the United States in violation of the prior order of removal. He signed the order to acknowledge receipt. He was again removed from the country on January 28, 2013.

In February or March 2019, Ramos-Ramos once more reentered the United States. On March 5, 2019, DHS reinstated Ramos-Ramos's prior order of removal. Ramos-Ramos refused to sign the notice form. And DHS did not actually remove Ramos-Ramos. Instead, DHS released Ramos-Ramos from federal custody. He moved back to Detroit, where he has lived ever since. Ramos-Ramos never filed a petition for review of that removal order.

On February 21, 2025, DHS again reinstated the order of removal. Ramos-Ramos signed the notice to acknowledge that he received it. He timely petitioned this court for review.

II.

Ramos-Ramos argues that DHS's decision to reinstate a removal order against him is invalid because there is no order to reinstate. Contrary to his arguments otherwise, Ramos-Ramos is subject to a valid removal order. Because that removal order is the one that DHS has decided to reinstate, the reinstatement order is valid under 8 U.S.C. § 1231.

A.

Our jurisdiction is narrow. Section 1252 allows us to review Ramos-Ramos's challenge to the reinstatement order, but we can only consider "constitutional claims or questions of law raised

in the context of reinstatement proceedings." *Villegas de la Paz v. Holder*, 640 F.3d 650, 656 (6th Cir. 2010); 8 U.S.C. § 1252. We cannot review the merits of the order being reinstated. 8 U.S.C. § 1231(a)(5) ("[T]he prior order of removal . . . is not subject to being reopened or reviewed.").

B.

The reinstatement procedure "establishes a process to remove [a non-citizen] 'under the prior order at any time after the reentry.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 44 (2006) (quoting 8 U.S.C. § 1231(a)(5)). The Attorney General can reinstate a prior removal order if a non-citizen "reenter[s] the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5); *see also* 8 C.F.R. § 241.8(a). Three steps are required to set the reinstatement process in motion. An immigration officer must verify (1) that the non-citizen was subject to a prior order of removal; (2) the non-citizen's identity; and (3) that the non-citizen unlawfully reentered the United States. 8 C.F.R. §§ 241.8(a)(1)–(3). Once the removal order is reinstated, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed," and the non-citizen "shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5).

In lieu of immediate deportation, voluntary departure allows a petitioner the option to leave the country at their own expense. *Id.* § 1229c(a)(1). Voluntary departure is discretionary. *Giraldo v. Holder*, 654 F.3d 609, 612 (6th Cir. 2011). If an IJ grants a petitioner's request for voluntary departure, the IJ must enter an alternate order of removal. 8 U.S.C. § 1229c(b); 8 C.F.R. § 1240.26(d). So, if the petitioner does not voluntarily depart, the alternate order of removal takes effect. 8 C.F.R. § 1241.1(f).

On July 3, 2012, the IJ presiding over Ramos-Ramos's removal proceedings granted Ramos-Ramos's request to voluntarily depart[1] and issued an alternate order of removal. The IJ's order was accompanied by a notice stating that if Ramos-Ramos did not leave the United States by July 17, 2012, "a removal order [would] automatically be entered against [him]." Because he did not leave the country before the voluntary-departure window expired, the removal order became effective. *See id.* That order is the basis for the three notices of reinstatement that DHS has since issued—in October 2012, March 2019, and the February 2025 order before this court. Ramos-Ramos did not sign the initial notice that accompanied the order, nor did he sign the 2019 written notice of reinstatement of the prior order. He did, however, sign the most recent notice.

Now, Ramos-Ramos claims that the IJ never issued a removal order because he was granted voluntary departure. But this assertion is meritless. Ramos-Ramos premises his argument on a false binary between voluntary departure and removal orders. In the reinstatement context, it makes no difference whether he was removed or permitted to depart voluntarily. *See Shtyllaku v. Gonzales*, 252 F. App'x 16, 19 (6th Cir. 2007) ("DHS's ability to reinstate a prior order of removal applies equally to aliens who are removed as it does to those [who] are allowed to depart voluntarily."). As long as he was "under an order of removal," the reinstatement process—and penalty—is the same. 8 U.S.C. § 1231(a)(5). And the fact that Ramos-Ramos initially received the chance to voluntarily depart has no bearing on the validity of the removal order. *Cf. Shtyllaku*,

---

[1] Ramos-Ramos appears to argue that the terms of his voluntary departure violated due process or were otherwise unfair because he was in federal custody at the time and was unable to voluntarily depart the country. While 8 U.S.C. § 1252(a)(2)(D) "re-vests the circuit courts with jurisdiction over constitutional claims or questions of law raised in the context of reinstatement proceedings," *Villegas de la Paz*, 640 F.3d at 656, and an equitable exception to the penalties for failing to voluntarily depart may exist if the noncitizen is "physically unable to depart," *see In re Zmijewska*, 24 I&N Dec. 87, 93–94 (BIA 2007), we do not reach those arguments here because they are time-barred. 8 U.S.C. § 1252(b)(1) (providing that any "petition for review must be filed not later than 30 days after the date of the final order of removal"); *see also Juarez-Chavez v. Holder*, 515 F. App'x 463, 466 (6th Cir. 2013) (rejecting an untimely collateral challenge to an underlying removal order).

252 F. App'x at 19 (explaining that petitioner was "still subject to an order for removal . . . regardless of whether there was permission to voluntarily depart"). Nor does his failure to sign the initial notice of reinstatement negate the signed order he now challenges. Indeed, Ramos-Ramos points us to no authority suggesting that a reinstatement order should be invalidated on this basis. As we have previously observed: "[A]s long as the [non-citizen] went through a proper deportation proceeding, the question of [his] deportability has been resolved." *Tilley v. Chertoff*, 144 F. App'x 536, 540 (6th Cir. 2005). That is the case here.

III.

For the forgoing reasons, we **DENY** the petition for review.